UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHILEN AMIN,

                Plaintiff,

     - against -

JITIN HINGORANI, JINGO MEDIA, DFW
SOUTH ASIAN FILM FESTIVAL (DFW
SAFF), NYC SOUTH ASIAN FILM
FESTIVAL (NYC SAFF), LI SOUTH
ASIAN FILM FESTIVAL (LI SAFF), and
TIDAL GROWTH CONSULTANTS,

                Defendants.

**MEMORANDUM**
**OPINION & ORDER**

22 Civ. 9851 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       This case arises out of a dispute between two film festivals over use of the phrase "South Asian Film Festival." Plaintiff owns the trademark SOUTH ASIAN FILM FESTIVAL and claims that Defendants infringed on his mark by holding competing film festivals that use the same phrase.

       In a September 21, 2023 bench ruling, this Court denied Plaintiff's motion for a preliminary injunction, in which he sought an order enjoining Defendants from using the term "South Asian Film Festival" in their advertising. (See Hearing Tr. (Dkt. No. 50) at 16:4-10, 22:15-23:5; Order (Dkt. No. 38)) Plaintiff has moved for reconsideration (Dkt. No. 42), and moved again for a preliminary injunction. (Pltf. PI Mot. (Dkt. No. 46)) For the reasons stated below, Plaintiff's motions will be denied.

## BACKGROUND[1]

### I.    FACTS

#### A.    The Parties

Plaintiff Shilen Amin founded and operates the South Asian International Film Festival (the "SAIFF").  (Cmplt. (Dkt. No. 1) ¶ 1)[2]  Since 2004, SAIFF has held a festival in New York City in which it screens South Asian films.  (Id. ¶ 11)

Defendants are Jitin Hingorani and entities that he uses to conduct competing festivals that feature South Asian films.  (Id. ¶ 14)  Hingorani's first South Asian film festival took place in Dallas/Fort Worth, Texas in 2015, and was conducted under the name "Dallas/Fort Worth South Asian Film Festival" and the acronym "DFW SAFF."  (Hingorani Decl. (Dkt. No. 29-4) ¶ 2)  In 2019, Hingorani debuted a South Asian film festival in New York City, using the name "NYC South Asian Film Festival" and the acronym "NYC SAFF."  (Id.)

#### B.    Plaintiff's Trademark Applications

On October 25, 2019, Plaintiff applied to the United States Patent and Trademark Office (the "PTO") for registration of the following marks related to his film festival:  SOUTH ASIAN FILM FESTIVAL (Serial No. 88669916) and the acronym SAFF (Serial No. 88669927); and SOUTH ASIAN INTERNATIONAL FILM FESTIVAL (Serial No. 88669905) and the acronym SAIFF (Serial No. 88669941).  (Cmplt. (Dkt. No. 1) ¶ 12)

---

[1]  The background of this case is set forth in this Court's September 21, 2023 bench ruling denying Plaintiff's initial motion for a preliminary injunction.  (Hearing Tr. (Dkt. No. 50) at 2:10-6:17)  Familiarity with the bench ruling is assumed.

[2]  The Court's factual statement is drawn from the Complaint, as well as declarations and exhibits submitted in connection with Plaintiff's motion for a preliminary injunction.  The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

In Plaintiff's application for SOUTH ASIAN FILM FESTIVAL and SAFF –
which is premised on Section 1(a) of the Lanham Act, 15 U.S.C. §§ 1051(a) – he represents that
each "mark was first used by the applicant . . . as early as 10/15/2003, and first used in
commerce at least as early as 10/15/2003, and is now in use in such commerce." (New
Application (Oct. 25, 2019), United States Patent and Trademark Office, https://tsdr.uspto.gov,
Serial No. 88669916; id., Serial No. 88669927)  In support of his application, Plaintiff attaches a
one-page flyer using the name "South Asian Film Festival (SAFF)," which advertises the
premiere of a film to be shown "on Saturday, September 16, 2000 @ Loews Cinemas – Lincoln
Square." (Id.)

In his application for SOUTH ASIAN INTERNATIONAL FILM FESTIVAL and
SAIFF – likewise premised on Section 1(a) of the Lanham Act – Plaintiff represents that each
"mark was first used by the applicant . . . as early as 09/30/2003, and first used in commerce at
least as early as 09/30/2003, and is now in use in such commerce."  (New Application (Oct. 25,
2019), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669905;
id., Serial No. 88669941)  In support of his application, Plaintiff attaches a one-page flyer using
the name "South Asian International Film Festival (SAIFF)," which advertises the premiere of a
film to be shown "on Thursday, February 17, 2000 @ Loews Cinemas – Lincoln Square."  (Id.)

In January and February 2020, the PTO rejected Plaintiff's applications, finding
that the phrases and acronyms specified in his applications are not eligible for trademark
protection, because they are "geographically descriptive":

> Registration is refused because the applied-for mark is primarily geographically
> descriptive of the origin of applicant's goods and/or services.  [Lanham] Act
> Section 2(e)(2), 15 U.S.C. § 1052(e)(2); see [Trademark Manual of Examining
> Procedure ("T.M.E.P.")] §§ 1210, 1210.01(a). . . .
>
> To establish a . . . services-place association, the evidence need only show a
> "reasonable basis" for concluding that the public is likely to believe that the mark

identifies the place from which the goods and/or services originate.  See In re JT
Tobacconists, [59 U.S.P.Q.2d 1080, 1083-84 (T.T.A.B. 2001)] (finding that
nothing in the record suggested that it would be incongruous or unexpected for
the purchasing public to believe that applicant's cigars, cigar cases and humidors,
"manufactured products which could have their origin practically anywhere,"
came from the place named in the mark, as applicant was located in the place and
the goods were packaged and shipped from the location, such that consumers
would have a reasonable basis to believe the goods came from the place named in
the mark). . . . In this case, the [flyer attached to the original application] shows
that the films are South Asian in origin.

Accordingly, registration is denied on the Principal Register.

Although the trademark examining attorney has refused registration, applicant
may respond to the refusal to register by submitting evidence and arguments in
support of registration.

For this application to proceed, applicant must explicitly address each refusal
and/or requirement in this Office action.  For a refusal, applicant may provide
written arguments and evidence against the refusal, and may have other response
options if specified above.

(Action Outgoing (Feb. 11, 2020), United States Patent and Trademark Office,

https://tsdr.uspto.gov, Serial No. 88669916; Action Outgoing (Jan. 31, 2020), United States

Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669905 (same))[3]

On March 3, 2020, Plaintiff requested reconsideration.  He did not address the

defect identified in the examiner's decision and did not submit additional exhibits.  Plaintiff

instead merely stated that he had "exclusively" and "continuously" used each mark in commerce

for the past eighteen years.  Plaintiff's entire argument for reconsideration is set forth below:

---

[3]  In rejecting Plaintiff's applications for SAFF and SAIFF, the PTO states that the descriptions
in the applications identifying "the goods and/or services covered by [SAFF and SAIFF]" are
"duplicative."  (Action Outgoing (Feb. 11, 2020), United States Patent and Trademark Office,
https://tsdr.uspto.gov, Serial No. 88669941; id., Serial No. 88669927)  In his applications to
register SAFF and SAIFF, Plaintiff provided an identical description of "the goods and/or
services covered by [each mark]: 'Entertainment services, namely, planning and conducting a
series of film festivals.'"  (Id.) (citing New Application (Oct. 25, 2019), United States Patent and
Trademark Office, https://tsdr.uspto.gov, Serial No. 88669927; id., Serial No. 88669941)  In its
decision rejecting the applications for the acronyms, the PTO states that the "recitation of
services . . . is unacceptable because it is duplicative wording."  (Id.)

> We are applying under Section 2(f) of the [Lanham] Act, 15 U.S.C. [§] 1052(f). Our organization is well over 18 years old and thus has a minimum of 5 years substantially, exclusively, and continuously use [sic] this mark in commerce. Thank you, Shilen

(Response to Office Action (Mar. 3, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916; id., Serial No. 88669905 (same))

As to the SAFF and SAIFF applications, the PTO examiner – with Plaintiff's consent – amended the applications to address Amin's duplicative descriptions. See Examiners Amendment (Mar. 3, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669927 (stating that, "[a]s agreed to by Shilen Amin on March 3, 2020, the examining attorney has amended the application . . . to remove the duplicate wording"); id., Serial No. 88669941.

On March 6, 2020, the PTO again rejected Plaintiff's registration applications for SOUTH ASIAN FILM FESTIVAL and SOUTH ASIAN INTERNATIONAL FILM FESTIVAL, but invited Plaintiff to amend his applications to specify that he was proceeding under Section 2(f) of the Lanham Act – acquired distinctiveness premised on substantially exclusive and continuous use of the marks in commerce for five years – rather than under Section 1(a) of the Lanham Act:

> The following refusal is maintained:  Geographically Descriptive. . . .

> On multiple dates, the examining attorney and Shilen Amin discussed the issues below.

> **Section 2(f)**

> The application record indicates that applicant has used its mark for a long time; therefore, applicant has the option to amend the application to assert a claim of acquired distinctiveness under [Lanham] Act Section 2(f).  See 15 U.S.C. § 1052(f); [T.M.E.P.] § 1212.05.

> To amend the application to Section 2(f) based on five years' use, applicant should request that the application be amended to assert a claim of acquired

distinctiveness under Section 2(f) and submit the following written statement claiming acquired distinctiveness, if accurate:

**The mark has become distinctive of the goods and/or services through the applicant's substantially exclusive and continuous use of the mark in commerce [such] that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement.**

[T.M.E.P.] § 1212.05(d); see 15 U.S.C. § 1052(f); 37 C.F.R. § 2.41(a)(2); [T.M.E.P.] § 1212.08. **This statement must be verified with an affidavit or signed declaration** under 37 C.F.R. § 2.20. 37 C.F.R. § 2.41(a)(2); [T.M.E.P.] § 1212.05(d); see 37 C.F.R. § 2.193(e)(1).

(Examiners Amendment Priority (Mar. 6, 2020); United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916; id., Serial No. 88669905) (emphasis in original)

That same day, Plaintiff re-submitted to the PTO the same three-sentence statement that he had filed on March 3, 2020 in seeking reconsideration of the initial rejection. (Response to Office Action (Mar. 6, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916; id., Serial No. 88669905) Plaintiff added a "declaration signature" to his statement acknowledging that he understood "that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001." (Id.)

On March 10, 2020, the PTO – without explanation – reversed its original decision, and granted registration of SOUTH ASIAN FILM FESTIVAL as a mark under Section 2(f). (Summary of Application at Publication (Mar. 10, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916) On May 3, 2020, the PTO placed the mark under Amin's name on the Principal Register. (Registration Certificate (May 3, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916) On March 10, 2020 – again without explanation – the PTO granted registration of SOUTH ASIAN INTERNATIONAL FILM FESTIVAL under Section 2(f). (Summary of Application at

Publication (Mar. 10, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669905)  On July 28, 2020, the PTO placed this mark under Amin's name on the Principal Register.  (Registration Certificate (July 28, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669905)

        As to SAFF and SAIFF – after Plaintiff addressed the PTO's duplicative wording objection on March 3, 2020 – on March 4, 2020, the PTO granted registration of SAFF and SAIFF under Section 1(a) of the Lanham Act, as an "actual use of the mark in commerce."[4]  See 15 U.S.C. § 1051(a) ("The owner of a trademark used in commerce may request registration of its trademark on the principal register. . . ."); Summary of Application at Publication (Mar. 4 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669927; id., 88669941)[5]

---

[4]  Plaintiff thus owns the following four federal trademark registrations:  Registration No. 6111773 for SOUTH ASIAN INTERNATIONAL FILM FESTIVAL; Registration No. 6715007 for SOUTH ASIAN FILM FESTIVAL; Registration No. 6715008 for SAFF; and Registration No. 6123049 for SAIFF.  (See Pltf. PI Br., Exs. A-C (Dkt. Nos. 49-1, 49-2, 49-3); Cmplt. (Dkt. No. 1) ¶ 12; see also '008 Registration (Dkt. No. 6-1); '049 Registration (Dkt. No. 6-1))  All marks "consist[ ] of standard characters without claim to any particular font style, size[,] or color." ('008 Registration (Dkt. No. 6-1) at 2)  "[N]o claim is made to the exclusive right to use" the term FILM FESTIVAL "apart from the mark as shown."  (Id.)

[5]  On October 31, 2019 – six days after Plaintiff Amin filed his applications to register SOUTH ASIAN FILM FESTIVAL, SAFF, SOUTH ASIAN INTERNATIONAL FILM FESTIVAL, and SAIFF – Defendant Hingorani filed an application with the PTO to register "NYC SAFF" and "DFWSAFF DALLAS FT WORTH SOUTH ASIAN FILM FESTIVAL." (New Application (Oct. 31, 2019), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88674918; id., Serial No. 88674911)  Given that Plaintiff's SOUTH ASIAN FILM FESTIVAL and SAFF applications had "an earlier filing date," the PTO "suspended" Defendant Hingorani's applications "pending the disposition of [Plaintiff's] application[s]."  (Notice of Suspension (Feb. 17, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88674918; id., Serial No. 88674911)  After the PTO registered Plaintiff's marks, the PTO denied Hingorani's applications, "because of a likelihood of confusion."  (Office Action (Aug. 18, 2022), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88674918; id., Serial No. 88674911)

II.    **PROCEDURAL HISTORY**

The Complaint was filed on November 18, 2022 (Cmplt. (Dkt. No. 1), and alleges that Defendants are infringing on Plaintiff's registered trademarks by using the following phrases and acronyms:  "NYC South Asian Film Festival" and its acronym "NYC SAFF"; "Long Island South Asian Film Festival" and its acronym "LI SAFF"; and "Dallas/Fort Worth South Asian Film Festival" and its acronym "DFW SAFF."  (Id. ¶ 14)  Plaintiff seeks, inter alia, an order (1) enjoining Defendants from "using Plaintiff's trademarks . . . to market their film festivals"; (2) compelling Defendants to "publish a disclaimer on their promotional or advertising materials that they are not associated in any manner with SAIFF"; and (3) requiring Defendants to "provide an accounting of all gross revenue derived from [their] festivals since 2015 and expenses incurred in producing such revenue."  (Id. at 12-14, ad damnum clause)

With his Complaint, Plaintiff filed a motion for a temporary restraining order and a preliminary injunction, seeking to enjoin Defendants "from using the trademarks registered to Plaintiff or any variations thereof or similar marks" in a film festival scheduled to take place the next day.  (TRO (Dkt. No. 4) at 1; see also Dkt. Nos. 6-8)  Over the next ten months, the hearing concerning Plaintiff's application for injunctive relief was adjourned nine times at the parties'

---

In rejecting Hingorani's applications, the PTO provided the following explanation:

> As the marks of the parties share the SOUTH ASIAN FILM FESTIVAL wording and the abbreviation SAFF and are highly similar, and the services of the parties identical and highly related, there exists a likelihood of confusion as to the source of the services and registration is refused.

(Id.)  Hingorani did not respond to the PTO's action, and the PTO later determined that his applications had been "abandoned."  (Notice of Abandonment (Mar. 7, 2023), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88674918; id., Serial No. 88674911)

request, so that they could engage in settlement discussions.  (Dkt. Nos. 11-12, 19-28, 31-32, 36-37)

The parties' settlement discussions were not successful.  (Pltf. Sept. 11, 2023 Ltr. (Dkt. No 36))  Accordingly, at a September 21, 2023 hearing, this Court addressed Plaintiff's pending motion for a preliminary injunction.  (September 21, 2023 Minute Entry (Docket Report for 22 Civ. 9851))  This Court denied Plaintiff's application, finding that he had "not shown a likelihood of success on his trademark infringement claims, nor ha[d] he shown sufficiently serious questions going to the merits to make them a fair ground for litigation."  (See Hearing Tr. (Dkt. No. 50) at 16:4-10; Sept. 21, 2023 Order (Dkt. No. 38))

On October 5, 2023, Plaintiff moved for reconsideration of this Court's September 21, 2023 bench ruling denying his application for a preliminary injunction, arguing that this Court had erred in not acknowledging that – as a result of Plaintiff's trademark registrations – his trademarks "enjoy[] a presumption of secondary meaning. . . . The presumption of secondary meaning that carried the day for Plaintiff in his successful trademark application should, under prevailing law, have satisfied Plaintiff's obligation to produce a prima facie case in this proceeding. . . ."  (Pltf. Recon. Br. (Dkt. No. 44) at 3)  Defendants filed their opposition to Plaintiff's reconsideration motion on October 19, 2023.  (Def. Recon. Opp. (Dkt. No. 45))

On October 20, 2023, Plaintiff filed a second motion for a preliminary injunction, seeking substantially the same relief as in his first application.  (Pltf. PI Br. (Dkt. No. 49) at 5)  On November 3, 2023, Defendants filed their opposition (Def. Opp. (Dkt. No. 53)), and on November 10, 2023, Plaintiff filed a reply.  (Pltf. Am. Reply (Dkt. No. 55))

Plaintiff states that his most recent preliminary injunction motion "incorporates all the arguments in, and essentially subsumes, the motion for reconsideration." (Pltf. Oct. 20, 2023 Ltr. (Dkt. No. 48) at 2; see also Pltf. PI Br. (Dkt. No. 49) at 8 (stating that second preliminary injunction application "fully incorporates the substance of the memorandum of law filed in support of Plaintiff's recently filed motion for reconsideration"))  Given these circumstances, the reconsideration motion (Dkt. No. 42) will be denied as moot, and this Court will go on to consider Plaintiff's second application for a preliminary injunction.

**DISCUSSION**

I.    **LEGAL STANDARD**

A court may issue a preliminary injunction only where

> plaintiff has demonstrated either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [plaintiff]'s favor. Second, the court may issue the injunction only if the plaintiff has demonstrated that he is likely to suffer irreparable injury in the absence of an injunction. . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor.  Finally, the court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction.

Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (alteration in original) (internal quotation marks and citations omitted); see also City of New York by & through FDNY v. Henriquez, 98 F.4th 402, 410 (2d Cir. 2024) (applying preliminary injunction standard in the trademark context).

The Complaint asserts trademark infringement under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).  (See Cmplt. (Dkt. No. 1), Second Cause of Action, ¶¶ 41-53)  Claims of trademark infringement under Sections 32 and 43(a) are analyzed under a two-prong test.  Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) (noting that the same analysis applies to claims brought under Sections 32 and 43(a)).  "The test looks first to

10

whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Id. (citing Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993)).

II.    **ANALYSIS**

As an initial matter, the Complaint does not allege facts demonstrating that Defendants have used the SOUTH ASIAN INTERNATIONAL FILM FESTIVAL and SAIFF marks. Given the absence of supporting factual allegations, there is no basis for this Court to enjoin Defendants from using these terms. Accordingly, Plaintiff's application for a preliminary injunction as to those marks is denied.

As to the SOUTH ASIAN FILM FESTIVAL and SAFF marks, the Complaint does allege infringing uses by Defendants. (See Cmplt. (Dkt. No. 1) ¶ 14 (alleging that Defendants "infringe[] on [Plaintiff's] trademarks by using the name 'South Asian Film Festival' and 'SAFF,' with those terms preceded or followed by a specific locality"); id. ¶ 16 (alleging that "the marks of the parties share the SOUTH ASIAN FILM FESTIVAL wording and the abbreviation SAFF and are highly similar") (citation omitted)) Accordingly, the Court considers below whether SOUTH ASIAN FILM FESTIVAL and SAFF are protectable terms and, if so, whether Plaintiff has demonstrated a likelihood of confusion.

A.    **Protectability of Plaintiff's Marks**

1.    **SOUTH ASIAN FILM FESTIVAL**

Plaintiff argues that the phrase SOUTH ASIAN FILM FESTIVAL is protectable because it is a "registered, descriptive trademark." (Pltf. Br. (Dkt. No. 49) at 9)

"A geographically descriptive term or phrase is one that 'designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location of

origin of the goods or services.'" Forschner Group, Inc. v. Arrow Trading Co. Inc., 30 F.3d 348, 355 (2d Cir. 1994) (quoting McCarthy on Trademarks and Unfair Competition § 14.02). It is well-settled that a geographic term such as "South Asian" – when coupled with a generic term such as "film festival" – is descriptive. See, e.g., New York Stock Exchange, Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002) ("New York" – when used with the generic term "stock exchange" – is descriptive); New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 329 (S.D.N.Y. 2010) ("New York City" – when used with the generic term "triathlon" – is descriptive).

Such geographically descriptive marks "will not receive trademark protection absent proof of secondary meaning." Forschner, 30 F.3d at 353-54. Secondary meaning is established where "the consuming public primarily associates the term with a particular source." Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1040 (2d Cir. 1992). Here, secondary meaning would be established by proof that the public associates the term SOUTH ASIAN FILM FESTIVAL or SAFF with Plaintiff's film festival, rather than as a general descriptive term denoting a festival promoting films relating to South Asia. Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982) (secondary meaning exists when, "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself"). The secondary meaning requirement reflects a balance that has been struck in trademark law between granting proprietors and merchants "the exclusive right" to use their "name or symbol," on the one hand, and "efficiency [concerns] and the public interest requir[ing] that every merchant [providing] a class of [services] be permitted to refer to the [services] by their name," on the other. Virgin Enterprises, 335 F.3d at 147; see also Jack Daniel's Properties, Inc. v. VIP Prod. LLC, 599 U.S. 140, 146 (2023) (noting that "a trademark

is not a trademark unless it identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)").

Because proof of secondary meaning is often difficult to obtain, the PTO and courts consider "advertising expenditures," "sales success," "consumer studies" linking the mark to a source, and the "length and exclusivity of the mark's use." Thompson Med. Co. v. Pfizer Inc., 753 F.2d 208, 217 (2d Cir. 1985). For example, a PTO examiner "may accept as prima facie evidence that [a] mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made." 15 U.S.C. § 1502(f); see Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 393 n.6 (2d Cir. 1995) (same). Such "a showing" may be made "by way of verified statements in the application." 37 C.F.R. § 2.41(a). A PTO examiner has the discretion to require "further evidence" of acquired distinctiveness, however. Id.

Where a party seeking a trademark registration is proceeding on a theory of acquired distinctiveness, "the applicant must 'make an explicit claim of distinctiveness under [Section] 2(f) [of the Lanham Act].'" Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 534 (S.D.N.Y. 2012) (quoting McCarthy on Trademarks and Unfair Competition § 19:11). Moreover, "[c]ourts take the sensible position that, for descriptive terms, the greater the degree of descriptiveness, the greater the evidentiary burden on plaintiff to prove secondary meaning." McCarthy on Trademarks and Unfair Competition § 11:25; Restatement (Third) of Unfair Competition § 13, cmt. e ("Highly descriptive terms . . . are less likely to be perceived as trademarks and more likely to be useful to competing sellers than are less descriptive terms.

More substantial evidence of secondary meaning thus will ordinarily be required to establish their distinctiveness.").

As discussed above, Plaintiff owns federal trademark registrations for SOUTH ASIAN FILM FESTIVAL, SAFF, SOUTH ASIAN INTERNATIONAL FILM FESTIVAL, and SAIFF.  (Pltf. PI Br., Exs. A-C (Dkt. Nos. 49-1-3); Amin Decl., Ex. A (Dkt. No. 6-1); see Cmplt. (Dkt. No. 1) ¶ 12)

As this Court acknowledged at the preliminary injunction hearing, "'a mark registered by its owner shall be prima facie evidence of the registrant's exclusive right to use the mark in commerce on the product,'" and "'marks that have been registered with the [PTO] have a presumption of validity.'"  (Hearing Tr. (Dkt. No. 50) at 7:15-24 (quoting first Gruner + Jahr, 991 F.2d at 1076 and then American Ort. Inc. v. Israel, No. 07 Civ. 2332 (KMK), 2007 WL 2049733, at *4 (S.D.N.Y. July 17, 2017)  The statutory "'presumption [of secondary meaning] is rebuttable[, however], and defendant[s] bear[] the burden of overcoming the presumption.'"  (Id. at 7:25-8:5 (quoting Horizon Mills Corp. v. QVC, Inc., 161 F. Supp. 2d 208, 215 (S.D.N.Y. 2001))

Although courts "accord weight to the initial conclusions" of the PTO regarding protectability, they are not bound by the presumption of validity flowing from a trademark registration.  Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 148 n.11 (2d Cir. 1997) (citation omitted).  Indeed, the Second Circuit has stated that

> the outcome of [a] PTO registration proceeding [does] not affect the legal standard applied in the infringement claim or the scope of the required fact-finding.  The District Court would still independently have to determine the validity and priority of the marks.

Goya Foods, Inc. v. Tropicana Prod., Inc., 846 F.2d 848, 854 (2d Cir. 1988) (holding that a district court need not wait for a PTO registration determination before ruling on a question of

trademark infringement); <u>see also</u> <u>First Nat'l. Bank of Omaha, Inc. v. Mastercard Int'l Inc.</u>, No. 02 Civ. 3691 (DLC), 2004 WL 1575396, at *7 (S.D.N.Y. July 15, 2004) (conducting an "independent evaluation of the [protectability] of the [registered] mark" at the preliminary injunction stage); <u>Flexitized, Inc. v. Nat'l Flexitized Corp.</u>, 335 F.2d 774, 780 (2d Cir. 1964) ("While registration of a trademark is <u>prima facie</u> evidence of its validity[,] . . . the mark's validity may be attacked in a collateral proceeding."); <u>Am. Home Prod. Corp. v. Morton-Norwich Prod., Inc.</u>, No. 78 Civ. 1493 (VSB), 1978 WL 21535, at *5 n.1 (S.D.N.Y. Oct. 6, 1978) ("[T]he Patent Office [is] concerned only with a refusal to register a mark and the cancellation of a registration.  [The trademark owner's] right to use it is not before [the Patent Office].") (citing <u>Hammermill Paper Co. v. Gulf States Paper Corp.</u>, 337 F.2d 662, 663 (C.C.P.A. 1964)); <u>accord</u> <u>Zobmondo Ent., LLC v. Falls Media, LLC</u>, 602 F.3d 1108, 1115 (9th Cir. 2010) ("[T]he federal officials who register a mark are perceived to have some expertise in assessing if it is entitled to registration. . . . Nonetheless, while the registration adds something on the scales, [courts] must come to grips with an assessment of the mark itself.").

Here, Plaintiff contends that he "submit[ted] an . . . ample record of the proof of confusion, marketing, advertising[,] and secondary meaning" to the PTO, "which resulted in the registration of his trademarks."  (Pltf. Br. (Dkt. No. 49) at 10)  The public record contains no such proof, however.  And the PTO examiner did not allude to any such proof during the application process, other than the one-page marketing flyer attached to Plaintiff's original application.  (<u>See</u> Action Outgoing (Jan. 31, 2020), United States Patent and Trademark Office, <u>https://tsdr.uspto.gov</u>, Serial No. 88669916)  Indeed, based on the public record, it appears that the sole basis for granting Plaintiff's application to register the SOUTH ASIAN FILM FESTIVAL mark was Plaintiff's declaration that he had been using the mark "substantially,

exclusively, and continuously . . . in commerce" for "a minimum of 5 years" preceding his

application.  (Response to Office Action (Mar. 6, 2020), United States Patent and Trademark

Office, https://tsdr.uspto.gov, Serial No. 88669916)

   "Acceptance of [such scant] evidence is purely discretionary and the [PTO

examiner had] no obligation [to] accept the evidence as proof of acquired distinctiveness."

McCarthy on Trademarks and Unfair Competition § 15:62.  Indeed, courts have upheld PTO

examiner decisions denying registration for highly descriptive marks where applicants provided

a much stronger showing.  For example, in In re Louisiana Fish Fry Prod., Ltd., 797 F.3d 1332

(Fed. Cir. 2015), the Federal Circuit affirmed the PTO examiner's decision not to register the

term FISH FRY PRODUCTS under Section 2(f), even though – unlike in the instant case – the

applicant submitted evidence of advertising expenditures and sales performance data in addition

to its declaration of "substantially exclusive and continuous use of the mark for at least the last

five years."  Id. at 1336-37.  In upholding the PTO's determination, the Federal Circuit noted that

the term FISH FRY PRODUCTS is "highly descriptive," and ruled that the applicant had failed

to meet its "elevat[ed] burden" to "show acquired distinctiveness."  Id. at 1334, 1336.  In so

holding, the Federal Circuit emphasized that where an applicant seeks registration of a highly

descriptive term and has weak evidence of acquired distinctiveness, PTO examiners have

"discretion not to accept [the applicant's] alleged five years of substantially exclusive and

continuous use as prima facie evidence of acquired distinctiveness."  Id. at 1334, 1336-37; see

also Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc., 906 F.3d 965, 979 (Fed. Cir. 2018)

(upholding Trademark Board's refusal to register the terms CORN THINS and RICE THINS

because they are "highly descriptive").

In arguing to the PTO and to this Court that the highly descriptive term SOUTH ASIAN FILM FESTIVAL is protectable, Plaintiff did not offer any evidence that consumers, advertisers, or the general public "primarily associate" the term SOUTH ASIAN FILM FESTIVAL with Plaintiff's festival. Bristol-Myers Squibb Co., 973 F.2d at 1040. Indeed, Plaintiff's only argument in support of his request for injunctive relief is that, as "the holder of a registered, descriptive trademark alleg[ing] infringement," he "enjoys a presumption of secondary meaning" based on his representation of "five years of continuous use." (Pltf. PI Br. (Dkt. No. 49) at 9, 16; see also id. at 15 ("[A subsequent user does not have] permission to infringe on a trademark that was registered."); id. at 16 ("The benefit of registration . . . accord[s] . . . [a] presumption of secondary meaning based on five years of continuous use."); id. ("A registered trademark is entitled to protection based on the presumption of secondary meaning the trademark laws grant.")) And in moving a second time for injunctive relief, Plaintiff argues that this Court erred – in denying his first application for injunctive relief – in failing to acknowledge that because "the registered trademark holder enjoys a presumption of secondary meaning[,] . . . the burden of proof [as to the secondary meaning issue] . . . falls on the alleged infringer." (Id. at 9) According to Plaintiff, as a result, "the Court stood the burden of proof on its head." (Id. at 3)

As discussed above, however, this Court explicitly acknowledged at the preliminary injunction hearing that registered trademarks have a presumption of validity. (Hearing Tr. (Dkt. No. 50) at 7:21-8:5, 17:14-22) In denying Plaintiff's application, the Court concluded that Plaintiff's registrations were not alone sufficient – given the highly descriptive terms at issue and the scant evidence of acquired distinctiveness – for this Court to conclude that Plaintiff has demonstrated a likelihood of success on his infringement claims or sufficiently serious issues going to the merits of those claims. See Salinger, 607 F.3d at 79-80. And while

PTO registration determinations are generally entitled to some measure of deference, here no deference was appropriate given (1) the fact that the PTO had twice rejected Plaintiff's registration applications on grounds that "the applied-for mark is primarily geographically descriptive of the origin of applicant's goods and/or services" (see Action Outgoing (Feb. 11, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916; Examiners Amendment Priority (Mar. 6, 2020); United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916); (2) the absence of any material in the public record justifying registration; and (3) the failure of the PTO examiner to explain why the PTO was reversing its two previous registration determinations.

Given the highly descriptive nature of the term SOUTH ASIAN FILM FESTIVAL, the PTO examiner should have required Plaintiff to submit more substantial evidence of secondary meaning, rather than rely on Plaintiff's three-sentence declaration alleging exclusive use in commerce over a five-year period.

As discussed above, Plaintiff did not demonstrate – either to the PTO examiner or to this Court – that the term "South Asian Film Festival" is identified with Plaintiff's festival to such a "prominent" extent "in commerce" so as to "result[] in a high degree of consumer recognition." Virgin Enterprises, 335 F.3d at 147. To the contrary, the record indicates that it is much more likely that consumers understand the highly descriptive term SOUTH ASIAN FILM FESTIVAL as conveying nothing more than a festival featuring South Asian films. Acknowledging that the PTO granted Plaintiff's registration applications, those determinations are not persuasive for reasons already explained. The Court concludes that Plaintiff has not

shown a likelihood of success on the issue of whether SOUTH ASIAN FILM FESTIVAL has

acquired secondary meaning, or serious issues going to the merits of that determination.[6]

        Absent such a showing, the words "South Asian film festival" are "merely

descriptive of the place where an article is manufactured or produced," and "cannot be

monopolized as a trademark." Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U.S. 665,

673 (1901); see also California Apparel Creators v. Wieder of Cal., 68 F. Supp. 499, 504

(S.D.N.Y. 1946), aff'd, 162 F.2d 893 (2d Cir. 1947) (noting that the word "Columbia," "'in

common use as designating locality, or section of a country, cannot be appropriated by any[]one

---

[6] Courts outside this Circuit have held that district courts "may not overrule the decision of
registerability of the [PTO] unless the party challenging the mark argues persuasively that the
mark was ineligible for protection." Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes,
Inc., 871 F.2d 590, 593 (6th Cir. 1989).

While the Second Circuit has not ruled on this issue, Defendants have proffered substantial
evidence that Plaintiff's marks are "ineligible for protection." (Def. Opp. (Dkt. No. 53) at 4-7)
As explained above, SOUTH ASIAN FILM FESTIVAL is a highly descriptive term, and there is
no evidence that it has acquired secondary meaning. Moreover, Defendants have proffered
substantial evidence that Plaintiff's use of SOUTH ASIAN FILM FESTIVAL and SAFF was not
substantially exclusive. Indeed, Defendants have identified six film festivals that used the terms
South Asian Film Festival and SAFF to describe and identify their competing film festivals in
the five years preceding Plaintiff's trademark registrations. (Id.; see Response to Office Action
(Mar. 6, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No.
88669916)

For example, the Enzian Theater in Maitland, Florida has "continuously hosted" and promoted
an annual film festival called the "South Asian Film Festival" or "SAFF" since 1995. (Def.
Opp., Ex. 4 (Curtis Decl.) (Dkt. No. 53-4) ¶¶ 1-7) Likewise, the D.C. South Asian Arts Council
has "continuously hosted a South Asian Film Festival since 2012, promoted as either DC South
Asian Film Festival or Washington South Asian Film Festival[,] and abbreviated as 'DCSAFF.'"
(Def. Opp., Ex. 3 (Singh Decl.) (Dkt. No. 53-3) ¶ 3) In connection with each of the six
competing film festivals, Defendants have proffered declarations from the founders of the
festivals or advertisements demonstrating that the competing film festivals "were well promoted
[and] were recognized by consumers." Scarves by Vera, Inc. v. Todo Imports Ltd., 544 F.2d
1167, 1173 (2d Cir. 1976) ("The significance of third-party trademarks depends wholly upon
their usage."); see, e.g., Singh Decl. (Dkt. No. 53-3) at 6 (photo of dozens of attendees at the
12th Annual DC South Asian Film Festival).

as his exclusive trade[]mark'") (quoting <u>Columbia Mill Co v. Alcorn</u>, 150 U.S. 460, 464 (1893)). For the same reason, a merchant who sells pencils labeled "Pencil" cannot "exclude other sellers of pencils from using [the word pencil] in their trade." <u>Virgin Enterprises</u>, 335 F.3d at 147.  A contrary ruling would bestow on that merchant "exclusivity [that] would deprive the consuming public of the useful market information it receives where every seller of pencils is free to call them pencils." <u>Id.</u>

These principles apply with equal force here.  It is necessary for Defendants – and other competing South Asian film festivals – to use the descriptive term "South Asian film festival" in order to communicate to consumers the nature of the product they are offering. <u>Star Indus., Inc. v. Bacardi & Co.</u>, 412 F.3d 373, 382 (2d Cir. 2005) (ruling "no one enterprise may be allowed to attain a monopoly on designs that its competitors must be able to use in order to effectively communicate information regarding their products to consumers").  The law does not permit a party – through a trademark registration – to monopolize the commercial use of such a highly descriptive term, particularly in the absence of any evidence of secondary meaning. <u>See</u> <u>Guthrie Healthcare Sys. v. ContextMedia, Inc.</u>, 826 F.3d 27, 42 (2d Cir. 2016) ("No one acquires a monopoly over the use of terms that ought to be generally available in the market of an area of commerce, as is the case to the extent one merchant acquires the exclusive right to the use of descriptive . . . language.").  A contrary ruling would not only harm competing South Asian film festivals, but also consumers, who "are likely to understand such terms in their descriptive sense rather than as an indication of source," <u>PaperCutter, Inc. v. Fay's Drug Co.</u>, 900 F.2d 558, 562 (2d Cir. 1990) (citing Restatement (Third) of Unfair Competition § 14 cmt. a), and have an "inherent 'right' to call a product by its name." <u>Thompson</u>, 753 F.2d at 216 (citing <u>Kellogg Co. v. National Biscuit Co.</u>, 305 U.S. 111, 119 (1938)).

Plaintiff argues, however, that Defendants and other competing South Asian film festivals could use names other than South Asian Film Festival for their festivals, such as "the Indian Subcontinent Film Festival" or "Bollywood's Best Film Festival." (Pltf. Br. (Dkt. No. 49) at 12) But granting Plaintiff a monopoly on use of the words "South Asian Film Festival" cuts against accurate communication to the consumer. And any such argument

> misapprehends the relevant concern. The trademark law should not grant, in effect, a monopoly to the first mark that effectively and concisely describes a product's use or function. Were this exclusive appropriation to occur, future entrants would be required to adopt a "less-descriptive" term, and engage in increased advertising to recoup the lost consumer appeal. Entry barriers would be created, discouraging entry and competition, particularly from small firms. This result is expressly at odds with the purposes of the trademark laws.

Thompson, 753 F.2d at 217.

In sum, Plaintiff has not demonstrated a likelihood of success on, or serious issues going to the merits of, his claim that the term SOUTH ASIAN FILM FESTIVAL is protectable.

### 2.    SAFF

In the September 21, 2023 bench ruling denying Plaintiff's initial application for a preliminary injunction, this Court found that the acronym "SAFF" is an arbitrary term, because – standing alone – it does not suggest a festival featuring South Asian films. (Hearing Tr. (Dkt. No. 50) at 12:15-13:2 (citing Kadant, Inc. v. Seeley Mach., Inc., 244 F. Supp. 2d 19, 28 (N.D.N.Y. 2003) (finding "AES" mark arbitrary, because "[t]he AES acronym has no logical relationship to products servicing the papermaking industry," and "does not suggest to any reasonable person that the product to which it is affixed is to be used in papermaking activities"))

In City of New York by and through FDNY v. Henriquez, 98 F.4th 402 (2d Cir. 2024), however, the Second Circuit instructed that "'[r]ecognizable abbreviations' for inherently descriptive (or generic) marks are usually themselves inherently descriptive (or generic)." Henriquez, 98 F.4th at 415 (quoting 1 McCarthy on Trademarks § 7:11). In that case, the

Second Circuit found that the mark "Medical Special Operations Conference" is descriptive, because it "corresponds so closely to the product it designates." Id.  The Henriquez court then considered the related acronym "MSOC," and held that "[t]he same is true for the acronym 'MSOC.'" Id.

Applying the teaching of Henriquez here, the acronym SAFF is "'substantially synonymous with'" the descriptive term SOUTH ASIAN FILM FESTIVAL which "'it represents.'" 1 McCarthy on Trademarks § 7:11 (quoting T.M.E.P 1209.03(h) (Acronyms)); see also id. § 11:32 ("An abbreviation of a descriptive term which still conveys to the buyer the descriptive connotation of the original term will still be held to be descriptive.").  As evidenced by Plaintiff's marks, Defendants' marks, and the marks of competing film festivals, the terms South Asian Film Festival and SAFF are synonymous and used interchangeably.  Because the acronym SAFF – like its parent SOUTH ASIAN FILM FESTIVAL – is a descriptive term under Henriquez, Plaintiff has not demonstrated a likelihood of success on, or serious issues going to the merits of, his claim that the term SAFF is protectable.

## CONCLUSIONS

For the reasons stated above, Plaintiff's renewed motion for a preliminary injunction is denied, and Plaintiff's motion for reconsideration is denied as moot.  The Court of Court is directed to terminate the motions (Dkt. Nos. 42, 46).

Dated: New York, New York
        August 16, 2024

SO ORDERED.

Paul G. Gardephe
United States District Judge