UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHILEN AMIN,

Plaintiff,

- against -

JITIN HINGORANI, JINGO MEDIA, DFW SOUTH ASIAN FILM FESTIVAL (DFW SAFF), NYC SOUTH ASIAN FILM FESTIVAL (NYC SAFF), LI SOUTH ASIAN FILM FESTIVAL (LI SAFF), and TIDAL GROWTH CONSULTANTS,

Defendants.

**MEMORANDUM OPINION & ORDER**

22 Civ. 9851 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Shilen Amin moves for reconsideration of this Court's August 16, 2024 order denying his second motion for a preliminary injunction. (Pltf. Second Recon. Mot. (Dkt. No. 61)) This motion is Plaintiff's third attempt to obtain injunctive relief before discovery. For the reasons stated below, the motion for reconsideration will be denied.

## BACKGROUND[1]

Plaintiff owns trademarks for the terms SOUTH ASIAN FILM FESTIVAL (Serial No. 88669916) and the acronym SAFF (Serial No. 88669927), and SOUTH ASIAN INTERNATIONAL FILM FESTIVAL (Serial No. 88669905) and the acronym SAIFF (Serial No. 88669941). (Cmplt. (Dkt. No. 1) ¶ 12) In his Complaint, Plaintiff claims that Defendants

[1] The factual background of this case is set forth in this Court's August 16, 2024 order denying Plaintiff's second motion for a preliminary injunction and September 21, 2023 bench ruling denying Plaintiff's initial motion for a preliminary injunction. (See August 16, 2024 Order (Dkt. No. 59) at 22; Hearing Tr. (Dkt. No. 50) at 2:10-6:17) Familiarity with this Court's prior rulings is assumed.

have infringed on his marks by holding competing film festivals that use these terms. (Id. ¶¶ 41-53)

With the filing of the Complaint, Plaintiff moved for a temporary restraining order and a preliminary injunction, seeking to enjoin Defendants "from using the trademarks registered to Plaintiff or any variations thereof or similar marks" in Defendants' film festival scheduled to take place the next day. (Dkt. Nos. 4, 6-8) In arguing that the marks related to his film festival are entitled to protection, Plaintiff's sole argument has been that his marks "are entitled to a presumption of validity," because he owns "certificate[s] of registration" for them. (Pltf. First PI Br. (Dkt. No. 8) at 3; see also Pltf. First PI Reply (Dkt. No. 33) at 3 (arguing that Plaintiff's "trademarks are protected because they are registered with the [United States Patent and Trademark Office ("PTO")]"); Hearing Tr. (Dkt. No. 50) at 17:4-13, 17:23-18:6 (Plaintiff arguing that "there's value to getting a registration," and "once you get a trademark . . . it's a rebuttable presumption that something is distinctive"))

In a September 21, 2023 bench ruling, this Court denied Plaintiff's application for a preliminary injunction. (See Hearing Tr. (Dkt. No. 50) at 16:4-10, 22:15-23:5; Order (Dkt. No. 38)) While acknowledging that "marks that have been registered with the [Patent and Trademark Office] are afforded a presumption of validity," this Court noted that "the presumption . . . is rebuttable." (Hearing Tr. (Dkt. No. 50) at 7:21-8:5; see also id. at 17:14-22 ("What the PTO does is not binding on [this Court].")) As to the marks SOUTH ASIAN FILM FESTIVAL and SOUTH ASIAN INTERNATIONAL FILM FESTIVAL, this Court concluded that "the Complaint does not adequately plead facts demonstrating that these [descriptive] marks have

acquired secondary meaning[.] [Accordingly,] these marks do not provide a basis for me to grant injunctive relief."[2] (Id. at 11:17-22)

In October 2023, Plaintiff moved for reconsideration of this Court's September 21, 2023 bench ruling denying his application for a preliminary injunction (Pltf. First Recon. Mot. (Dkt. No. 42)), and moved again for a preliminary injunction, seeking substantially the same relief as in his first application. (Pltf. Second PI Mot. (Dkt. No. 46)) As to the protectability of his marks, Plaintiff argued that "the Court did not correctly apply black letter law . . . [that] the registered trademark holder enjoys a presumption of secondary meaning," and that "the burden of proof on issues like secondary meaning falls on the alleged infringer." (Pltf. Second PI Br. (Dkt. No. 49) at 9; id. (arguing that "the Court stood the burden of proof on its head" in denying his first application for injunctive relief))

In connection with his second application for a preliminary injunction, Plaintiff submitted several exhibits that he says were "introduced at the [PTO] examiner and [the Trademark Trial and Appeal Board (TTAB)] levels," and that demonstrate that his marks have secondary meaning. (Id. at 9-10) Plaintiff maintained, however, that "such proof [is] not required," because marks held by "registered trademark holders" enjoy a presumption of secondary meaning. (Id. at 10)

In sum, Plaintiff has consistently argued to this Court that – because he holds registered marks – he is "not legally required to prove anything." (Id. at 9; see also Pltf. Recon. Br. (Dkt. No. 44) at 3 (arguing that "[t]he presumption of secondary meaning that carried the day

---

[2] As to the acronym SAFF, this Court found that the mark was "arbitrary" and thus entitled to protection, but that Plaintiff had not demonstrated a likelihood of success in establishing that Defendants' alleged use of that mark would cause consumer confusion. (Hearing Tr. (Dkt. No. 50) at 12:17-18, 16:6-8) As to SAIFF, the Court found that "the Complaint does not allege that [D]efendants have [used] or are using that mark." (Id. at 11:23-24)

for Plaintiff in his successful trademark application should, under prevailing law, have satisfied Plaintiff's obligation to produce a prima facie case in this proceeding"))

In an August 16, 2024 order, this Court denied Plaintiff's second application for a preliminary injunction.

The Court began its analysis by noting that the Complaint asserts trademark infringement under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). (Aug. 16, 2024 Order (Dkt. No. 59) at 10-11) (citing Cmplt. (Dkt. No. 1), Second Cause of Action, ¶¶ 41-53) In considering whether to issue a preliminary injunction in such a case, courts must assess whether "'plaintiff has demonstrated either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits.'" (Id. at 10) (quoting Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010)) Claims of trademark infringement under Sections 32 and 43(a) are analyzed under a two-prong test. (Id. at 10-11) (citing Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) (noting that the same analysis applies to claims brought under Sections 32 and 43(a)) "'The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" (Id.) (quoting Virgin Enterprises, 335 F.3d at 146)

In denying Plaintiff's second application for a preliminary injunction, this Court found that "Plaintiff has not demonstrated a likelihood of success on, or serious issues going to the merits of, his claim that [his marks are] protectable" – the first element of the test – and

therefore, has not demonstrated a likelihood of success on his trademark infringement claim.[3] (Id. at 21-22)

In reaching this conclusion, this Court considered the public record associated with Plaintiff's applications to register the SOUTH ASIAN FILM FESTIVAL and SOUTH ASIAN INTERNATIONAL FILM FESTIVAL marks, and the associated acronyms, with the PTO. In connection with his applications to the PTO, Plaintiff submitted:

(1) the following three-sentence statement:

> We are applying under Section 2(f) of the [Lanham] Act, 15 U.S.C. [§] 1052(f). Our organization is well over 18 years old and thus has a minimum of 5 years substantially, exclusively, and continuously use [sic] this mark in commerce. Thank you, Shilen

(Response to Office Action (Mar. 3, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916; id., Serial No. 88669905 (same));

(2) a "declaration signature" acknowledging that he understood that "that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001" (Response to Office Action (Mar. 6, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916; id., Serial No. 88669905 (same));

(3) a one-page marketing flyer that used the term "South Asian Film Festival" and the acronym SAFF, and which advertised the premiere of a film to be shown "on Saturday, September 16, 2000 @ Loews Cinemas – Lincoln Square." (New Application (Oct. 25, 2019), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916); and

(4) a one-page marketing flyer that used the term "South Asian International Film Festival and the acronym SAIFF, and which advertised the premiere of a film to be shown "on Thursday, February 17, 2000 @ Loews Cinemas – Lincoln Square." (Id., Serial No. 88669905)

---

[3] Given this Court's finding that Plaintiff had not shown a likelihood of success as to the first element of his trademark infringement claim, this Court did not reach the issue of whether Plaintiff had shown a likelihood of success on the second element – consumer confusion.

The PTO granted registration of Plaintiff's marks in March 2020. (See Aug. 16, 2024 Order (Dkt. No. 59) at 6-7)

In the August 16, 2024 order, this Court again explained that "while PTO registration determinations are generally entitled to some measure of deference" (see id. at 17-18),

> no deference was appropriate [here] given (1) the fact that the PTO had twice rejected Plaintiff's registration applications on grounds that "the applied-for mark is primarily geographically descriptive of the origin of applicant's goods and/or services" (see Action Outgoing (Feb. 11, 2020), United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916; Examiners Amendment Priority (Mar. 6, 2020); United States Patent and Trademark Office, https://tsdr.uspto.gov, Serial No. 88669916); (2) the absence of any material in the public record justifying registration; and (3) the failure of the PTO examiner to explain why the PTO was reversing its two previous registration determinations.

(Id. at 18) The Court went on to determine that "Plaintiff did not demonstrate – either to the PTO or to this Court – that the term 'South Asian Film Festival' is identified with Plaintiff's festival to such a 'prominent' extent 'in commerce' so as to 'result[] in a high degree of consumer recognition.'" (Id.) (quoting Virgin Enterprises, 335 F.3d at 147)

As to SOUTH ASIAN FILM FESTIVAL, the Court found that this term is "highly descriptive," and that the record before the PTO and this Court "indicates that it is much more likely that consumers understand the highly descriptive term SOUTH ASIAN FILM FESTIVAL as conveying nothing more than a festival featuring South Asian films." (Id. at 18, 21)

As to SAFF, the Court found that this term is "'substantially synonymous with'" its "parent SOUTH ASIAN FILM FESTIVAL," and – under recent Second Circuit law – is a "descriptive term." (Id. at 22) (quoting 1 McCarthy on Trademarks § 7:11) (citing City of New York by & through FDNY v. Henriquez, 98 F.4th 402, 415 (2d Cir. 2024)) And for the same reasons explained in connection with SOUTH ASIAN FILM FESTIVAL, Plaintiff had not

demonstrated a likelihood of success on his claim that SAFF had acquired secondary meaning. (Id.)

As to SOUTH ASIAN INTERNATIONAL FILM FESTIVAL and SAIFF, "the Complaint does not allege facts demonstrating that Defendants have used [such] marks," and accordingly, "there is no basis for this Court to enjoin Defendants from using these terms." (Id. at 11)

On August 30, 2024, Plaintiff moved for reconsideration of this Court's August 16, 2024 order denying his second motion for a preliminary injunction. (Pltf. Second Recon. Mot. (Dkt. No. 61))

**DISCUSSION**

"'Motions for reconsideration are governed principally by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" Walsh v. Townsquare Media, Inc., 565 F. Supp. 3d 400, 402 (S.D.N.Y. 2021) (quoting In re Gen. Motors LLC Ignition Switch Litig., No. 14-MD-2543 (JMF), 2021 WL 1700318, at *1 (S.D.N.Y. Apr. 29, 2021)). Such a motion "is an extraordinary request," Van Buskirk v. United Grp. of Companies, Inc., 935 F.3d 49, 54 (2d Cir. 2019), "'to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quoting Wendy's Int'l, Inc. v. Nu–Cape Construction, Inc., 169 F.R.D. 680, 685 (M.D. Fla. 1996)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The decision to grant or deny a

motion for reconsideration is 'committed to the sound discretion of the district court.'" Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (quoting Wilder v. News Corp., 11 Civ. 4947 (PGG), 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016)).

Here, Plaintiff argues that the Court "overlooked" "three unrefuted examples of consumer confusion" he submitted in connection with his second application for a preliminary injunction. (Pltf. Second Recon. Br. (Dkt. No. 62) at 3) (citing Amin Decl., Ex. V (Dkt. No. 47-10))

As an initial matter, and as discussed above, Plaintiff's central claim throughout his repeated requests for injunctive relief has been that (1) he need not offer evidence of secondary meaning; and (2) his PTO registration is sufficient to demonstrate that his marks are protectable. (See, e.g., Pltf. Second PI Br. (Dkt. No. 49) at 10 (arguing that "proof [of secondary meaning] was not required because of the presumption afforded [to] registered trademark holders" that their marks are protectible); id. at 9 (arguing that "the Court did not correctly apply black letter law . . . [that] the registered trademark holder enjoys a presumption of secondary meaning," and that "the burden of proof on issues like secondary meaning falls on the alleged infringer"); id. (arguing that "the Court stood the burden of proof on its head" in denying Plaintiff's first application for injunctive relief)) In any event, and as discussed below, Plaintiff's three alleged examples of consumer confusion do not demonstrate that his marks have acquired secondary meaning.

As explained in the August 16, 2024 order, "secondary meaning would be established by proof that the public associates the term SOUTH ASIAN FILM FESTIVAL or SAFF with Plaintiff's film festival, rather than as a general descriptive term denoting a festival promoting films relating to South Asia." (Aug. 16, 2024 Order (Dkt. No. 59) at 12) (citing

Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982) (secondary meaning exists when, "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself"))

Proving secondary meaning "entails [meeting] vigorous evidentiary requirements." Thompson Med. Co. v. Pfizer Inc., 753 F.2d 208, 217 (2d Cir. 1985) (internal quotation marks and citation omitted) Relevant evidence includes advertising expenditures, sales success, consumer studies linking the mark to a source, and proof regarding the length and exclusivity of the mark's use.[4] Id. For example, in considering proof of secondary meaning at the preliminary injunction stage, the Second Circuit has given weight to evidence of "market dominance," "extensive national advertising," and a consumer survey indicating that "[f]ifty percent of [respondents] correctly identified . . . the publisher" based on the mark at issue. Harlequin Enterprises Ltd. V. Gulf & W. Corp., 644 F.2d 946, 949-50 & n.2 (2d Cir. 1981) (affirming issuance of preliminary injunction). Similarly, in considering the mark "NYC Triathlon," the court gave weight to evidence showing that this triathlon had been the only Olympic-distance triathlon in New York City over the previous ten years, and that this triathlon's revenue from sales was "ten times greater than any other race of its kind." New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 315 (S.D.N.Y. 2010) (explaining that "the length and exclusivity of [p]laintiff's use of the NYC TRIATHLON Mark[] compels a finding of secondary meaning").

---

[4] The Court first advised Plaintiff of the deficiencies in his showing of secondary meaning in its September 21, 2023 bench ruling denying his first application for a preliminary injunction. For example, the Court noted that "the Complaint contains no information concerning [P]laintiff's advertising expenditures or sales success, and [P]laintiff has provided no evidence of consumer surveys or media coverage regarding his film festivals." (Hearing Tr. (Dkt. No. 50) 14:6-16:10)

In asserting secondary meaning, Plaintiff states that his film festival "is the largest film premiere destination for South Asian/Indian filmmakers in the United States. It was founded in 2004." (Cmplt. (Dkt. No. 1) ¶ 11) Plaintiff further asserts that he began continuously using the terms SOUTH ASIAN FILM FESTIVAL and SAFF in 2006. (Pltf. Am. Reply (Dkt. No. 55) at 4-5) Plaintiff has also submitted PowerPoint slides and other promotional materials he has distributed to donors. According to Plaintiff, in 2021 3,820 people streamed the festival, there were 68 million "media impressions," and his film festival generated an "average income" of more than $126,500. (Amin Decl., Ex. W (Dkt. No. 47-11) at 40) "Past [and] present" sponsors of Plaintiff's film festival include HBO, British Airways, Citibank, The New York Times, and Verizon. (Id. at 42) Plaintiff also points to advertisements and media coverage of his film festival (Amin Decl., Exs. P, Q (Dkt. Nos. 47-4, 47-5)), including a reference on a Bollywood entertainment website stating that "HBO's South Asian film festival in New York" is a "prestigious film festival." (Amin Decl., Ex. Q (Dkt. No. 47-5) at 2)

Most of the media coverage cited by Plaintiff references "South Asian International Film Festival" and "SAIFF," however. (See, e.g., Amin Decl., Ex. Q (Dkt. No. 47-5) at 59 (New York Times referring to "the seventh annual South Asian International Film Festival"); id. at 63-64 (Hollywood Reporter referring to a festival "presented by HBO" and to "[t]he South Asian International Film Festival"); id. at 44 (the "10th South Asian International Film Festival in New York will open with Amit Kumar's noir thriller"); id. at 20 ("Kanu Behl's Titli won the Grand Jury Prize for Best Feature at the South Asian International Film Festival in New York.")) As discussed above, the Complaint does not allege that Defendants have used the SOUTH ASIAN INTERNATIONAL FILM FESTIVAL and SAIFF marks, and accordingly these marks provide no basis for this Court to issue a preliminary injunction.

Moreover, the advertisements, film reviews, and other promotional materials submitted by Plaintiff do not demonstrate that a significant percentage of prospective film festival attendees associate the term "South Asian film festival" primarily with Plaintiff's film festival. See Virgin Enterprises, 335 F.3d at 147. Moreover, Plaintiff does not (1) indicate what his market share is; (2) contextualize his 2021 film festival's number of "attend[ees]" and "average income" (see Amin Decl., Ex. W (Dkt. No. 47-11)) against the film festival market as a whole; (3) state how much he spent on advertising; or (4) offer evidence that a representative, disinterested sample of prospective film festival attendees have drawn the requisite connection between the descriptive term "South Asian film festival" and his film festival.[5]

Plaintiff's assertion that his film festival has "proven audience name recognition" (Amin Decl. (Dkt. No. 47) ¶ 18) is, of course, entitled to little weight. Such "conclusory assertions in [] boilerplate affidavits [or declarations]" – from an affiant or declarant with "personal biases" – "offer only scant support for the proposition that plaintiff's mark had acquired the requisite level of recognition among the relevant audience." Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 340, 345-46, 370 (E.D.N.Y. 2007) (giving no weight to fourteen affidavits from advertisers who claimed that they "automatically associate" the mark at issue with plaintiff); see also Plasmart, Inc. v. Wincell Int'l Inc., 442 F. Supp. 2d 53, 59-60 (S.D.N.Y. 2006) (plaintiff's declaration that "he believes that consumers

---

[5] While Plaintiff argues that the number of attendees at his film festival, and the number of individuals who have streamed the festival, demonstrate that his film festival has "an established track record and proven audience name recognition" (see Amin Decl. (Dkt. No. 47) ¶ 18; id., Ex. W (Dkt. No. 47-11)), the number of people who attended and/or streamed his event has little bearing on whether they associate the descriptive term "South Asian film festival" with Plaintiff's film festival.

associate the trade dress at issue" with his product is insufficient to "show a likelihood of success" as to secondary meaning).

The fact that a Bollywood entertainment website has stated that "HBO's South Asian film festival in New York" is "prestigious" (Amin Decl., Ex. Q (Dkt. No. 47-5) at 2), undermines – rather than supports – Plaintiff's request for injunctive relief. This reference shows that the website associated Plaintiff's film festival with HBO, and not with Plaintiff.

Plaintiff has also not demonstrated that his use of the term "South Asian film festival" has been exclusive. As discussed in the August 16, 2024 order (see Aug. 16, 2024 Order (Dkt. No. 59) at 19 n.6), Defendants have offered evidence that others have used the term "South Asian film festival" in their marketing. (See Def. Opp., Ex. 3 (Singh Decl.) (Dkt. No. 53-3) ¶ 3 (noting that the District of Columbia South Asian Arts Council has "continuously hosted a South Asian Film Festival since 2012, and has promoted its event as either the D.C. South Asian Film Festival or the Washington South Asian Film Festival"); id., Ex. 4 (Curtis Decl.) (Dkt. No. 53-4) ¶¶ 1-7 (noting that a Florida movie theater has, since 1995, "continuously hosted" and promoted an annual film festival called the "South Asian Film Festival"))

In sum, Plaintiff has not provided evidence sufficient to demonstrate that he is likely to prevail on the issue of whether SOUTH ASIAN FILM FESTIVAL and SAFF have acquired secondary meaning.

Plaintiff argues, however, that this Court "overlooked . . . dispositive evidence" of "consumer confusion" in denying his second application for a preliminary injunction. (Pltf. Second Recon. Br. (Dkt. No. 62) at 3) Plaintiff's evidence of consumer confusion is the following:

(1) A November 17, 2019 Facebook chat message from Kripa Ranjan Prasad, a television network representative. Prasad had decided to attend Defendants' film festival but

mistakenly messaged Plaintiff's Facebook account to ask for directions to "the nov 17th event closing ceremony" for Defendants' film festival. (Amin Decl., Ex. V (Dkt. No. 47-10) at 1, 4)

(2) An October 2, 2019 email chain among Plaintiff, Josh Hurtado – his head of programming – and a sales agent, in which Plaintiff was seeking to source a film to be featured in his upcoming film festival. The sales agent stated, "[W]e are already in touch with Ambica Dev for the NY SAFF, I assume this is the same festival?" (Id. at 6) The sales agents was referring to Defendants' film festival. (Id. at 5)

(3) A November 3, 2019 email from Hurtado to Plaintiff, in which Hurtado states that he is having difficulty "sour[cing] and secur[ing] great films" for their film festival. (Id. at 8) Hurtado complains that he "feel[s] really in the dark" without "regular communications" with Plaintiff, that his "morale is low right now," that their upcoming film festival "lack[s] an airline sponsor," and that there is "direct competition/confusion from NYC SAFF." (Id.)

As an initial matter, the issue of whether a mark is entitled to protection – because it has acquired secondary meaning – is "distinct" from the issue of whether a defendant's use of the same or similar mark is likely to cause consumer confusion. See Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc., 307 F. Supp. 3d 260, 289 (S.D.N.Y. 2018) ("secondary meaning" – a factor relevant to the first element of trademark infringement – and "commercial strength" – a factor relevant to the second element – "are distinct legal concepts in that the former is a threshold issue of validity, while the latter focuses on an infringement determination."); Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993) (explaining that a plaintiff bringing a trademark infringement claim "has two obstacles to overcome").

In any event, even if evidence of alleged "consumer confusion" was relevant to this Court's determination of whether Plaintiff has shown that SOUTH ASIAN FILM FESTIVAL and SAFF have acquired secondary meaning, Plaintiff's three anecdotes do not constitute evidence of consumer confusion.

As an initial matter, Hurtado's conclusory statement that there is "direct competition/confusion from NYC SAFF" (Amin Decl., Ex. V (Dkt. No. 47-10) at 8) is not evidence of consumer confusion.

As to the television network representative and sales agent, there is no reason to believe that they are representative of the consuming public in general. In any event, because Plaintiff's and Defendants' film festivals both feature South Asian films and South Asian artists, and because of the highly descriptive nature of the term "South Asian film festival," these anecdotes merely suggest that the term "South Asian film festival" communicates the nature of – rather than the source of – the product. (See Aug. 16, 2024 Order (Dkt. No. 59) at 20); see also Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 382 (2d Cir. 2005) ("[N]o one enterprise may be allowed to attain a monopoly on designs that its competitors must be able to use in order to effectively communicate information regarding their products to consumers."); Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 42 (2d Cir. 2016) ("No one acquires a monopoly over the use of terms that ought to be generally available in the market of an area of commerce, as is the case to the extent one merchant acquires the exclusive right to the use of descriptive . . . language."); PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 562 (2d Cir. 1990) (noting that consumers "are likely to understand [terms such as "papercutter"] in their descriptive sense rather than as an indication of source").

In sum, Plaintiff has not shown a likelihood of success on, or even serious issues going to the merits of, whether or not SOUTH ASIAN FILM FESTIVAL and SAFF have acquired secondary meaning, and are therefore protectible. Plaintiff is thus not entitled to injunctive relief.

**CONCLUSION**

Plaintiff's second motion for reconsideration (Dkt. No. 61) is denied, and Plaintiff's request for a preliminary injunction is likewise denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 61).

Dated: New York, New York
November 6, 2024

SO ORDERED.

Paul G. Gardephe
United States District Judge